IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEWITT LAMAR LONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DAVID YOMES, WINSTON LEONG, | )  Civ. No. 11-00136 ACK-KSC |
| RANDALL RIVERA, SCOTT NAKASONE, | ) |
| LOUIS M. KEALOHA, CITY AND | ) |
| COUNTY OF HONOLULU, JOHN DOES 1- | ) |
| 25, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

### I. PROCEDURAL BACKGROUND

This case concerns Plaintiff Dewitt Lamar Long's alleged mistreatment by Honolulu police officers during an arrest. (Am. Compl. ¶¶ 12-35, ECF No. 5.) Each of the Defendants in this action have moved to have the amended complaint dismissed. There are three separate motions to dismiss, but the three motions contain several overlapping or duplicative arguments. The Court will therefore address the motions together.

The first motion to dismiss was filed on June 1, 2011, on behalf of Defendants Winston Leong, Randall Rivera, Scott Nakasone, and Louis M. Kealoha. (ECF No. 7.) Leong, Rivera, and

Nakasone are Honolulu police officers who were allegedly involved with the arrest. (Am. Compl. ¶¶ 6-8, 21, 26.) Kealoha is Honolulu's chief of police, and was sued only in his official capacity. (Id. ¶ 9.) The City and County filed its motion to dismiss on June 27. (ECF No. 11.) Finally, David Yomes filed his motion to dismiss on July 7. (ECF No. 22.) Yomes is another police officer who was allegedly involved with the arrest. (Am. Compl. ¶¶ 5, 20.) Each motion to dismiss was accompanied by a memorandum in support. (ECF Nos. 7-1, 11-1, 22-1.)

Long filed an opposition to the three motions to dismiss on August 18, 2011, and Defendants filed a joint reply in support of their motions on August 23, 2011. (ECF Nos. 26, 27.)[1] The Court held a hearing on the motions on September 6, 2011. The Court will GRANT in part and DENY in part each of the motions to dismiss.

---

[1] Long's filing was two days late. The local rules provide that oppositions are to be filed "not less than twenty-one (21) days prior to the date of the hearing." LR 7.4. The hearing on these motions took place on September 6, 2011, so Long's opposition should have been filed by August 16. In their reply, Defendants urge the Court to disregard or strike the opposition as untimely. (Reply at 2-3.)

On August 17, the Court noted that Long had failed to file a timely opposition. When a party fails to make a timely filing, it is the Court's practice to inquire whether the party intends to file something. The Court contacted Long's attorneys on August 17, and one of them informed the Court that she had written an incorrect deadline for the opposition in her calendar and would file the opposition by August 18.

Defendants have not attempted to show that they were prejudiced by the late filing, and the Court finds that they were not. The Court will therefore consider Long's opposition.

Long's amended complaint alleges that Long "noticed a dark colored vehicle following him" as he was driving along King Street on January 16, 2010. (Am. Compl. ¶¶ 12–13.) Long attempted to allow the car to pass, but the car stayed behind him. (Id. ¶ 14–18.) He then turned left onto Punchbowl Street, where he was surrounded by "several unmarked vehicles" and "forc[ed] to stop." (Id. ¶ 19.)

After Long stopped, Defendants Yomes and Leong approached the driver's and passenger's side of Long's car, respectively, and Yomes demanded that Long produce his driver's license. (Id. ¶¶ 20–22.) "As Plaintiff was attempting to comply," Yomes apparently changed his mind, and "ordered Plaintiff to put both of his hands on the steering wheel." (Id. ¶ 23.) At the same time, Yomes also "ordered Plaintiff to exit his vehicle." (Id.) While this was going on, Leong drew his gun and got into Long's car from the passenger's side. (Id. ¶ 24.) Yomes "then attempted to forcefully remove Plaintiff from the passenger side of his vehicle while Plaintiff was still secured inside by his seat belt." (Id. ¶ 25.)[3/] Defendants Rivera and

_____

[2/] The facts as recited in this order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[3/] There are no allegations concerning when Yomes moved from
(continued...)

Nakasone then joined Yomes at the passenger's side and helped pull Long out of the car. (<u>Id.</u> ¶ 26.)

As Defendants were removing Long from his car, Yomes's gun "accidentally fell" to the ground. (<u>Id.</u> ¶ 27.) "When the firearm fell to the ground Defendants violently assaulted Plaintiff and forced him face down to the ground where he was handcuffed." (<u>Id.</u> ¶ 28.) Long suffered injuries that required treatment in the emergency room at The Queen's Medical Center. (<u>Id.</u> ¶ 29.)

Long alleges that he "did not at any time provoke, invite, consent to, or otherwise allow or permit Defendants to assault him." (<u>Id.</u>) Indeed, the complaint contains no indication as to why the police officers stopped Long's car.

Long was charged "for carrying a deadly weapon." (<u>Id.</u>) It is not clear from the complaint whether the weapon at issue was the one that Yomes dropped or some other weapon. In any event, the Circuit Court "determined that the stop and seizure of Plaintiff . . . was illegal," and suppressed "all evidence seized by the officers." (<u>Id.</u> ¶ 30.) Thereafter, "the prosecution of Plaintiff was terminated." (<u>Id.</u>)

---

[3]/ (...continued)
the driver's side of Long's car to the passenger's side, or how Yomes managed to attempt to remove Long through the passenger's side after Leong had already entered the car through that side.

-4-

## III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted." Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient

-5-

to defeat a motion to dismiss.  <u>See</u> <u>Sprewell</u>, 266 F.3d at 988;

<u>Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of</u>

<u>Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex</u>

<u>Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover,

the court need not accept as true allegations that contradict

matters properly subject to judicial notice or allegations

contradicting the exhibits attached to the complaint.  <u>Sprewell</u>,

266 F.3d at 988.

     In summary, to survive a Rule 12(b)(6) motion to

dismiss, "[f]actual allegations must be enough to raise a right

to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if

doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007) (internal citations and quotations omitted).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations . . . a plaintiff's obligation

to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  <u>Id.</u> (internal

citations and quotations omitted).  Dismissal is appropriate

under Rule 12(b)(6) if the facts alleged do not state a claim

that is "plausible on its face."  <u>Id.</u> at 570.  "Determining

whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing

-6-

court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted). "But courts have discretion to deny leave to amend a complaint for futility, and futility includes the inevitability of a claim's defeat on summary judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir.1987) (citations and internal quotation marks omitted).

## IV. DISCUSSION

### A.    Official-Capacity Claims

Defendants Yomes, Leong, Rivera, and Nakasone are named both individually and in their official capacities. (Am. Compl. ¶¶ 5-8.) Defendant Kealoha is named only in his official capacity. (Id. ¶ 9.) Defendants argue that the claims against these defendants in their official capacities are redundant because the City and County of Honolulu is also named as a defendant. (Leong Mot. Mem. at 10-13; Yomes Mot. Mem. at 11-12.)

Defendants are correct. The Supreme Court noted

-7-

decades ago that "[t]here is no longer a need to bring
official-capacity actions against local government officials, for
under <u>Monell</u>, . . . local government units can be sued directly
for damages and injunctive or declaratory relief." <u>Kentucky v.
Graham</u>, 473 U.S. 159, 167 n.14 (1985). Long made no argument to
the contrary in his response or at the hearing. The official-
capacity claims "duplicate[] the claims asserted against the City
and County of Honolulu" and are therefore DISMISSED. <u>Wong v.
City & Cnty. of Honolulu</u>, 333 F. Supp. 2d 942, 947 (2004).

     Defendant Kealoha was named only in his official
capacity. With the dismissal of the official-capacity claims,
there are no claims remaining against him. Kealoha is therefore
DISMISSED from this action.[4/]

     The Court will now turn to the four unlabeled causes of
action against the remaining defendants.[5/]

---

     [4/] Long conceded at the hearing that Kealoha should be
dismissed from this action.

     [5/] The Court notes briefly Defendants' repeated argument
that the complaint is insufficient for its failure to associate
each count with specific defendants. (<u>See, e.g.</u>, Reply at 5.).
The Court agrees that the complaint should have been drafted more
clearly. But this particular deficiency is no basis for
dismissal, because there is no reasonable basis for confusion as
to which defendants are associated with which claims. All of the
defendants who were named in their individual capacity allegedly
participated in the arrest. It is unreasonable to construe the
complaint as alleging that the City and County of Honolulu
somehow took a corporeal form and assaulted the plaintiff. (<u>Id.</u>
("[T]he City, as a fictional legal entity, is incapable of
assaulting anyone, yet all 'Defendants' purportedly assaulted
                                              (continued...)

-8-

**B.**        **The First Cause of Action**

        The first cause of action alleges that "Plaintiff . . .
suffered the loss of his liberty without any probable,
sufficient, just, or reasonable cause in violation of rights
guaranteed to him by the Fourth, Fifth, Ninth, and Fourteenth
Amendments to the United States Constitution."  (Am. Compl.
¶ 38.)

        Defendants argue that while the "allegations . . .
support violations of [Long's] Fourth Amendment rights," Long has
failed to allege any violation of any "rights under the . . .
Fifth, Ninth, and Fourteenth Amendments."  (Leong Mot. Mem. at 4;
Yomes Mot. Mem. at 5.)  In his opposition and at the hearing,
Long made no effort to save his Fifth, Ninth, or Fourteenth
Amendment claims, and the Court agrees with Defendants that no
such claims are supported by the amended complaint.  To the
extent that the first count asserts claims under the Fifth,
Ninth, and Fourteenth Amendments, those claims are DISMISSED.
See Thourot v. Tanavusa, Civ. No. 11-00032 LEK-KSC, 2011 WL
2746334, at *5-7 (D. Haw. July 11, 2011) (dismissing Fifth,
Ninth, and Fourteenth Amendment claims in another case filed by

---

        [5/] (...continued)
Plaintiff.").)  And while it is true that "there are no facts to
establish that [Defendant] Kealoha was present at the time of
Plaintiff's arrest,"  Kealoha was sued only in his official
capacity.  (Id.)

Long's attorneys concerning an arrest).[6]

The complaint does, however, state a § 1983 claim for violations of the Fourth Amendment, which guards against, <u>inter alia</u>, unreasonable seizures and the use of excessive force during arrests.  <u>See</u> <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 978 (9th Cir. 2010) (en banc) ("An excessive-force claim that arises in the context of an arrest is properly characterized as one invoking the protections of the Fourth Amendment.") (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989)); <u>Dubner v. City & Cnty. of S.F.</u>, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification.").

The factual allegations in the amended complaint, including but not limited to the allegations that the police officers "attempted to forcefully remove Plaintiff from the passenger side of his vehicle while Plaintiff was still secured inside by his seat belt," and that they "violently assaulted Plaintiff and forced him face down to the ground," (Am. Compl. ¶¶ 25, 28), state a § 1983 claim based on Fourth Amendment violations that is "plausible on its face."  <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see also</u> <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962,

---

[6] The Court notes that Long attached a copy of <u>Thourot</u> to his opposition.  (Opp'n Ex. 2.)

969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Indeed, the amended complaint alleges that another court has already "determined that the stop and seizure of Plaintiff . . . was illegal." (Am. Compl. ¶ 30.) It does not, however, specifically allege whether that determination was based on Fourth Amendment violations.

Despite their concession that Long's "allegations . . . support violations of his Fourth Amendment rights," Defendants argue that Long's Fourth Amendment claim is "fatally flawed" because certain of Long's allegations are made only "on information and belief." (Leong Mot. Mem. at 4-6; Yomes Mot. Mem. at 5-6.) The Court finds this argument unpersuasive. Even assuming the questionable premise that allegations made on information and belief are insufficient to state a claim under Iqbal, the "central allegations" of Long's complaint are those concerning Defendants' conduct during the arrest. (Id.) Those allegations are not made on "information and belief," and they constitute "non-conclusory 'factual content' [that is] plausibly suggestive of a claim entitling the plaintiff to relief." Moss, 572 F.3d at 969. Indeed, the only allegations made on "information and belief" are "formulaic recitation[s] of the elements of a cause of action." Twombly, 550 U.S. at 555; (see

-11-

also Am. Compl. ¶¶ 33, 37–38, 40, 42, 44.)  These allegations,
standing alone, would likely be insufficient to state a claim
under Iqbal and Tombly no matter whether they were pleaded on
"information and belief."

In sum, the motions to dismiss are DENIED with respect
the first cause of action's § 1983 claim for violations of the
Fourth Amendment.

**C.**         **The Second Cause of Action**

The second cause of action "incorporates by reference
all of the allegations contained in paragraphs 1 through 35," and
then alleges that "Defendant Kealoha and certain of the Doe
Defendants failed and/or refused to properly train, supervise,
and/or discipline police officers under their supervision and
control thereby proximately and directly causing the injuries to
Plaintiff complained of herein."  (Am. Compl. ¶¶ 39–40.)  Long
appears to be raising a claim for municipal liability under 42
U.S.C. § 1983.  See Monell v. Dep't of Soc. Servs. of N.Y., 436
U.S. 658, 690 (1978) (holding that in certain circumstances,
"[l]ocal governing bodies . . . can be sued directly under § 1983
for monetary, declaratory, or injunctive relief").[7]

_____

[7] To the extent that the second cause of action may instead
be construed as a claim under state law, the cause of action
fails because Long "fails to plead facts identifying how the City
failed in its supervision, or identifying any acts in which
discipline was necessary, but not taken."  Thourot v. Tanavusa,
Civ. No. 11-00032 LEK-KSC, 2011 WL 2160610, at *5 (D. Haw. May
(continued...)

Defendants argue that the amended complaint is insufficient under Federal Rule of Civil Procedure 8(a), <u>Iqbal</u>, and <u>Twombly</u>. (Leong Mot. Mem. at 6 ("Nowhere does he mention how, when or under what circumstances the Defendant . . . failed to properly train, supervise, and/or discipline police officers under his supervision and control."); City Mot. Mem. at 7 (same); Yomes Mot. Mem. at 6-7 (same).) The Court agrees; the complaint as currently drafted contains no allegations that would support a municipal liability claim.

Long's argument in opposition to the motions points to the allegation that "the prosecution of Plaintiff was terminated" only after the Circuit Court determined that the stop and seizure was illegal. (Opp'n at 17 (citing Am. Compl. ¶ 30).) Long argues that this allegation, standing alone, "illustrates that Defendant Officers' conduct was approved by their superiors, including Defendant Kealoha, who filed and pursued a flawed investigation, arrest, and prosecution until a state judge put an end to the proceedings." (<u>Id.</u>) Long further argues that "[r]ather than disciplining the Defendant Officers, whose conduct was unacceptable, Defendant[s] . . . have continued to assert that their specific training, supervision, and disciplinary policies and protocols . . . in no way caused Plaintiff's

---

[7/] (...continued)
31, 2011).

-13-

injuries." (Id.)

　　　Long's argument finds no basis in the allegations
actually set forth in the amended complaint.  There is no
allegation that the arresting officers were not disciplined, for
example, and no allegation that Long was the subject of any
investigation prior to his arrest.  There is nothing in the
amended complaint that indicates what if any policy or custom of
the City and County deprived Long of his constitutional rights,
or what if any training, supervision, or discipline of the police
officers by the City and County fell short.  The complaint does
not allow the Court to "draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 129 S.
Ct. at 1949; see also Dimming v. Pima County, Civ. No. 09-189-
TUC-CKJ, 2011 WL 855797, at *2-3 (D. Ariz. Mar. 11, 2011)
(quoting Thompson v. City of Los Angeles, 885 F.2d 1439, 1444
(9th Cir. 1989) ("[P]roof of random acts or isolated events [is]
insufficient to establish custom.")); Loewe v. City & Cnty. of
Honolulu, Civ. No. 10-00368 DAE-KSC, 2010 WL 4642024, at *5 (D.
Haw. Nov. 3, 2010) ("Plaintiffs do not identify any training
program, much less a deficient training program, that would
likely result in the violation of Decedent's constitutional
rights."); but see Dawkins, 761 F. Supp. 2d at 1087 (holding that
allegations of a violent arrest, which occurred "without any
provocation from Plaintiff or probable cause to believe he had

committed a crime," could support an inference "that the City failed to adequately train and/or supervise the police officers who arrested Plaintiff").[8]

The Court is sympathetic to Long's argument at the hearing that it is difficult to state a claim like the second cause of action without the benefit of discovery. However, the Court cannot sanction what appears to be a fishing expedition, especially where a cause of action fails to meet the standards set forth in Iqbal and Tombly. The second cause of action is therefore DISMISSED.

**D.        The Third Cause of Action**

The third cause of action incorporates paragraphs 1 through 35 of the amended complaint, and then alleges "that Defendants negligently caused Plaintiff to suffer physical injuries, pain, mental anguish, emotional distress, anxiety, embarrassment, humiliation, worry, and anger in amounts to be proven at trial." (Am. Compl. ¶¶ 41–42.)[9]

_____

[8] Dawkins's ruling on the Monell-based failure to train and/or supervise claim seems questionable under cases such as City of Canton v. Harris, 489 U.S. 378, 388–92 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983. . . . [P]ermitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities . . . .").

[9] This vague allegation might be construed to encompass both ordinary negligence and the negligent infliction of
(continued...)

Defendants argue that they cannot be held liable for negligence because of the "qualified or conditional privilege" recognized by Hawai'i law.[10/] (Leong Mot. Mem. at 8-10; City Mot. Mem. at 9-11; Yomes Mot. Mem. at 9-11.) As another court in this district has explained:

> Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974). This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. Towse, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).
>
> For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Towse, 647 P.2d at 702-03; Medeiros, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law

---

[9/] (...continued)
emotional distress. Long's opposition treats the claim as one for ordinary negligence, and the Court therefore construes it as such. (See Opp'n at 1, 18-19.) As the Court explains infra note 15, the third cause of action should be amended to clarify the basis for relief.

[10/] In contrast, Defendants have not argued that they are entitled to qualified immunity with regard to the federal § 1983 claims set forth in the first cause of action.

provides that the cloak of immunity is lost
and the official must defend the suit the
same as any other defendant.  <u>Marshall v.
Univ. of Haw.</u>, 821 P.2d 937, 946 (Haw. Ct.
App. 1991), <u>abrogated on other grounds by</u> <u>Hac
v. Univ. of Haw.</u>, 73 P.3d 46 (Haw. 2003).
    The existence or absence of malice is
generally a question for the jury.  <u>Runnels</u>,
525 P.2d at 1129.  However, when the
existence or absence of malice is
demonstrated to the court via uncontroverted
affidavits or depositions, the court may rule
on the existence or absence of malice as a
matter of law.  <u>See id.</u>

<u>Edenfield v. Estate of Willets</u>, Civ. No. 05-00418 SOM-BMK, 2006

WL 1041724, at *11-12 (D. Haw. Apr. 14, 2006) (parallel citations

omitted).[11/]

    The Supreme Court of Hawaiʻi has held that "the phrase

'malicious or improper purpose' should be defined in its ordinary

and usual sense."  <u>Awakuni v. Awana</u>, 165 P.3d 1027, 1042 (Haw.

2007).  In <u>Awakuni</u>, the Supreme Court relied on <u>Black's Law

Dictionary</u>, which defines "malicious" as "'[s]ubstantially

certain to cause injury' and '[w]ithout just cause or excuse'";

and defines "malice" as "'[t]he intent, without justification or

excuse, to commit a wrongful act[,]' 'reckless disregard of the

law or of a person's legal rights[,]' and '[i]ll will; wickedness

of heart.'"  <u>Id.</u> (quoting <u>Black's Law Dictionary</u> 976-77 (8th ed.

_____

    [11/] The Court notes that if Long had alleged that Defendants
were acting outside the scope of their employment, Defendants
could not rely on the "qualified or conditional privilege" and
Long's negligence claim would not have to allege malice.  <u>See
Edenfield</u>, 2006 WL 1041724, at *11; <u>Kajiya v. Dep't of Water
Supply</u>, 629 P.2d 635, 640 (Haw. App. 1981).

2004)).

Defendants rely heavily on the decision in Bartolome v. Kashimoto, Civ. No. 06-00176 BMK, 2009 WL 1956278 (D. Haw. June 26, 2009). In that case, which also involved the alleged use of excessive force by Honolulu police officers during an arrest, the court held that a showing of malice was "incompatible with a claim based on negligence." Id. at *2. The court stated that "[t]he level of intent required to demonstrate malice removes the alleged injurious action from the realm of negligence into that of intentionally tortious conduct," and therefore concluded that "when 'actual malice' must be shown, a non-judicial official's qualified privilege provides complete immunity from negligence claims." Id. In other words, the court appears to have concluded that a Honolulu police officer can never be held liable for negligence in connection with the officer's conduct during an arrest.

The Court respectfully disagrees to a limited extent with the analysis in Bartolome. While the requirement that plaintiffs show actual malice to overcome the "qualified or conditional privilege" is a significant obstacle, it does not preclude negligence liability in all cases. In particular, conduct performed with "reckless disregard of the law or of a person's legal rights" may be negligent, even though negligent conduct often does not involve malice. See Bright v. Quinn, 20

-18-

Haw. 504 (1911) (affirming an award of punitive damages in a negligence action because the evidence supported "[a] finding that the defendant operated his automobile on the occasion in question with a reckless indifference to the rights of the plaintiff or of any others who might be on the street-car");[12/] see also Onnette v. Reed, 832 S.W.2d 450, 454 (Tex. Crim. App. 1992) (holding that a negligence claim overcame pleas of quasi-judicial immunity because the appellant referred to the defendants' conduct "as 'grossly negligent,' 'heedless,' as

---

[12/] In Bright, the Supreme Court of Hawaiʻi held that "in actions of tort," including negligence actions, punitive damages may be awarded:

> where the defendant "has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations"; or where there has been "some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences". In such cases a reckless indifference to the rights of others is equivalent to an intentional violation of them.

20 Haw. at 512 (internal citations omitted, emphasis added). In Masaki v. General Motors Corp., 780 P.2d 566 (Haw. 1989), the Supreme Court of Hawaiʻi relied on Bright in holding that punitive damages are recoverable in products liability actions based on strict liability. Id. at 571-73 ("This court has long recognized that punitive damages are recoverable in tort action based on negligence."). Masaki also followed Wangen v. Ford Motor Co., 294 N.W.2d 437 (Wis. 1980), which "reject[ed] the argument that exemplary damages are incompatible with the underlying theories of negligence and strict liability." Masaki, 780 P.2d at 572-73. Finally, in Ditto v. McCurdy, 947 P.2d 952 (Haw. 1997), the Supreme Court of Hawaiʻi emphasized that "the jury needed only find either willful misconduct or entire want of care, to wit, gross negligence, in order to properly award punitive damages." Id. at 960 (emphasis in original).

demonstrating 'callous indifference' and 'reckless disregard,' and in other similarly negative terms").

Indeed, numerous cases in this district have considered negligence claims in the context of the "qualified or conditional privilege." See, e.g., Thourot, 2011 WL 2746334, at *8 (allowing a negligence claim against police officers to survive Rule 12(b)(6) dismissal because the plaintiff alleged that the officers acted with malice); Castro v. Melchor, 760 F. Supp. 2d 970, 996-98 (D. Haw. 2010) (allowing a negligence claim against prison guards to survive summary judgment because there were genuine disputes of material fact as to whether the guards acted with malice); Kealoha v. Dep't of Pub. Safety, Civ. No. 05-00009 ACK-KSC, 2007 WL 1303021, at *9 (D. Haw. May 2, 2007) (noting that the court previously "held that a genuine issue of fact as to whether Sgt. Fields acted with malice precluded it from determining whether Sgt. Fields [was] entitled to qualified immunity as to the negligence claim"); see also Ogden ex rel. Estate of Ogden v. County of Maui, 554 F. Supp. 2d 1141, 1153 (D. Haw. 2008) (dismissing on summary judgment a similar negligence claim because the plaintiff did not address malice and the facts did not support an inference of malice).[13]

---

[13] In the Dawkins case, the court allowed a negligence claim against police officers to survive Rule 12(b)(6) dismissal because the plaintiff alleged facts from which it was plausible to infer that the officers acted with malice. See 761 F. Supp.
(continued...)

Accordingly, the Court finds that the "qualified or conditional privilege" does not bar Long's third cause of action as a matter of law. The Court is mindful of "the public policy underlying the privilege that 'only the most guilty of officials' should be subject to tort liability for their actions." Bartolome, 2009 WL 1956278, at *2 (citation omitted). The Court's ruling is in conformity with this public policy. A plaintiff can state a negligence claim against a non-judicial official only if the plaintiff has adequately alleged that the official recklessly disregarded the law or the plaintiff's legal rights. In other words, the plaintiff must allege that the official "was motivated by malice and not by an otherwise proper purpose." Edenfield, 2006 WL 1041724, at *12.[14/] Here, the Court

_____

[13/] (...continued)
2d at 1090-91. On summary judgment, however, the court held that "[b]ecause actual malice involves intent, reckless disregard, or ill will, the actual malice requirement [necessary to overcome the "qualified or conditional privilege"] is 'incompatible with a claim based on negligence.'" Dawkins v. City and Cnty. of Honolulu, Civ. No. 10-00086 HG-KSC, 2011 WL 1598788, at *15 (D. Haw. Apr. 27, 2011) (quoting Bartolome, 2009 WL 1956278, at *2). The court found that the police officers were thus entitled to summary judgment on the negligence claim. See id. This Court respectfully disagrees with Dawkins's summary judgment analysis for the same reasons and to the same extent that it disagrees with Bartolome.

[14/] The Court emphasizes that establishing a "negligence" claim against a non-judicial official, which requires showing that the official recklessly disregarded the law or the plaintiff's legal rights, ultimately entails proof of more than simple or ordinary negligence. Cf. Tagawa v. Maui Publ'g Co., 448 P.2d 337, 341 (Haw. 1968) ("[M]ere negligence is not 'actual
(continued...)

-21-

finds that Long has indeed alleged facts from which it can be inferred that Defendants acted with reckless disregard of the law or of Long's legal rights.

The Court now considers whether Long has stated a claim for negligence. Defendants argue that the count should be dismissed because the complaint fails to allege any specific duty that Defendants breached. (Leong Mot. Mem. at 7; City Mot. Mem. at 8; Yomes Mot. Mem. at 7). This argument is unpersuasive, as the Hawaiʻi Supreme Court has, "in a variety of contexts,

──────────────

[14/] (...continued)
malice.'"). As the Supreme Court of Kansas has explained:

> When describing conduct as being either "wanton" or "reckless," we discern little or no difference to be attached to the meaning of these terms. In either case we are dealing with conduct which is something more than ordinary negligence, yet something less than willful or intentional injury. This is demonstrated by the marked similarity found in the commonly accepted definitions. To constitute "wantonness," the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result. . . . For conduct to be "reckless," it must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended.

Duckers v. Lynch, 465 P.2d 945, 948 (1970) (internal citations omitted). Similarly, under Hawaiʻi law, "a gross negligence claim requires a showing of an entire want of care which would raise the presumption of a conscious indifference to consequences." Mullaney v. Hilton Hotels Corp., 634 F. Supp. 2d 1130, 1154 (D. Haw. 2009) (citing Ass'n of Apartment Owners v. Venture 15, Inc., 167 P.3d 225, 290 (Haw. 2007)).

repeatedly recognized a duty owed by all persons to refrain from taking actions that might <u>foreseeably</u> cause harm to others." <u>Taylor-Rice v. State</u>, 979 P.2d 1086, 1097 (1999) (emphasis in original).  There can be no reasonable dispute that the conduct alleged in the amended complaint involved actions that might foreseeably cause harm.  (Am. Compl. ¶¶ 25, 28, 29.)  The motions to dismiss are therefore DENIED as to the third cause of action.[15/]

**E.**        **The Fourth Cause of Action**

The only new allegation in the "Fourth Cause of Action" is the following:

> Plaintiff is informed and believes, and
> thereupon alleges, that Defendants acted
> herein knowingly, deliberately,
> intentionally, and maliciously without regard
> for the rights, interests, and well-being of
> Plaintiff,  thereby proximately causing the
> injuries alleged herein.

(Am. Compl. ¶ 44.)

Defendants construe the fourth cause of action as a "claim for punitive damages."  (Leong Mot. Mem. at 7; City Mot. Mem. at 8; Yomes Mot. Mem. at 7.)  Defendants correctly state that such claims cannot be asserted independently.  <u>See</u> <u>Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.</u>, 879 P.2d 1037, 1049 (Haw.

---

[15/] Although the Court finds that Long's "negligence" claim survives dismissal, the Court instructs that the claim should nevertheless be amended to clarify the basis for relief.  The claim is vague, bordering on dismissal pursuant to <u>Twombly</u>, and the complaint must be amended for other purposes in any event.

1994). They also correctly state that the City and County of
Honolulu cannot be held liable for punitive damages in this case.
<u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.13 ("[P]unitive
damages are not available under § 1983 from a municipality.");
<u>Lauer v. Young Men's Christian Ass'n of Honolulu</u>, 557 P.2d 1334,
1342 (Haw. 1976) ("Public policy dictates the conclusion that the
City, as a municipal corporation, should not be held liable for
punitive damages.").

In his opposition, Long sidesteps Defendants' argument
by denying that the claim is one for punitive damages; he argues
that the fourth cause of action is "essentially" one for
"intentional infliction of emotional distress." (Opp'n at 1.)[16/]
To prevail on an IIED claim, Long must show "(1) that the act
allegedly causing the harm was intentional or reckless, (2) that
the act was outrageous, and (3) that the act caused (4) extreme
emotional distress." <u>Enoka v. AIG Ins. Co.</u>, 128 P.3d 850, 872
(Haw. 2006). "Outrageous" acts are those "without just cause or
excuse and beyond all bounds of decency." <u>Id.</u> "Extreme
emotional distress" includes, "<u>inter alia</u>, mental suffering,
mental anguish, nervous shock, and other highly unpleasant mental
reactions." <u>Id.</u> (internal quotation marks omitted).

Upon close examination, the fourth count contains

_____

[16/] Long later refers to the cause of action more broadly as
one for "Intentional Torts." (Opp'n at 18.)

-24-

sufficient allegations to state a claim for intentional infliction of emotional distress. The count "incorporates all of the allegations contained in Paragraphs 1 through 42, above." (Am. Compl. ¶ 43.) Each of the elements of an IIED claim appear at some point in the incorporated allegations. The actions alleged, such as the attempted forceful removal of Long through the passenger side of his car while he was still wearing his seatbelt, and the violent assault of Long, are intentional acts that could be considered outrageous. (Id. ¶ 25, 28.) And the complaint alleges that "[a]s a direct and proximate result of the foregoing, Plaintiff suffered great mental anguish, emotional distress, anxiety, embarrassment, humiliation, worry and anger." (Id. ¶ 35.)

Yet the complaint fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. It fails to even provide a "formulaic recitation of the elements of a cause of action." Id. The count, like all of the counts in the complaint, is unlabeled. The defendants clearly did not interpret the count as one for intentional infliction of emotional distress; their argument relies on the "appear[ance]" that Long was attempting to state an independent claim for punitive damages. (E.g., Yomes Mot. Mem. at 7.) Until the Court reviewed Long's opposition, it would have agreed with Defendants that the count was nothing more than an

-25-

independent punitive-damages claim. The count is so vague as to be meaningless.[17/] The count fails to give fair notice as to what it concerns, and is therefore DISMISSED.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part each of the three motions to dismiss. Specifically:

(1) all claims against Defendants Yomes, Leong, Rivera, and Nakasone in their official capacities are DISMISSED;

(2) Defendant Kealoha is DISMISSED;

(3) the first cause of action is DISMISSED to the extent that it attempts to state claims under the Fifth, Ninth, and Fourteenth Amendment, but the motions to dismiss are otherwise DENIED as to that count;

(4) the second cause of action is DISMISSED;

(5) the motions to dismiss are DENIED as to the third cause of action; and

(6) the fourth cause of action is DISMISSED.

Long is GRANTED LEAVE to file an amended complaint

---

[17/] Long's description of the cause of action as one for "Intentional Torts" is telling. (Opp'n at 18.) In addition to intentional infliction of emotional distress, the incorporated allegations could be construed as claims for a number of other intentional torts, such as assault or battery. Indeed, at the hearing, Long belatedly notified Defendants and the Court that he meant to assert claims of assault, battery, and false arrest, as well as intentional infliction of emotional distress.

correcting the deficiencies noted in this order within thirty days.  Here, the Court notes the City's comment, with respect to the second count in the amended complaint, that "Plaintiff does not state a particular theory of municipal liability, but instead attempts to allege any and [sic] cognizable ones." (City Mot. Mem. at 7.)  This description is accurate, and the fourth cause of action is similarly vague.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555 (stating that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). If Long chooses to file a second amended complaint, he must specifically identify the theories under which he intends to proceed, and allege facts that "raise a right to relief above the speculative level." <u>Id.</u>

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi , September 20, 2011.



_____
Alan C. Kay
Sr. United States District Judge

<u>Long v. Yomes, et al.</u>, Civ. No. 11-00136 ACK-KSC, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss